# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**WALTER BRANSON BENNETT,**

          Plaintiff,

    -vs-                                                                                                      Case No. 09-C-895

**DEPUTY DONALD PETIG,**
**MELISSA QUEST, and DANA SCHERER,**

          Defendants.

---

# DECISION AND ORDER

---

Walter Branson Bennett's ("Bennett") driver's license was suspended pursuant to a default judgment on a traffic ticket. Bennett asserts that the defendants knew or should have known that the process in relation to this ticket was served at the wrong address. Bennett claims that the defendants violated his rights to procedural and substantive due process; his right to equal protection; his right to privacy; his rights under the commerce clause; and finally his rights under the privileges and immunities clause. The defendants move for summary judgment. For the reasons that follow, this motion is granted.

## Background

Bennett was driving south on Hwy A in rural Jefferson County when he came upon a stopped school bus. Bennett alleges that he stopped for the school bus but noticed that it was being operated with blinking red lights on the front rather than what he believed to be legally required yellow lights. Bennett and the bus driver engaged in a hostile encounter.

According to the bus driver's incident report, the stop arm on the bus was extended and Bennet stopped his vehicle rather close to the bus. As the children exited the bus, Bennett began driving forward. The bus driver pressed on his horn and the children returned to the bus until Bennett passed.

Deputy Donald Petig was dispatched to First Bus Service in Cambridge to address the bus driver's complaint. According to the Sheriff Department's dispatch information, Bennett's plate number came back as a Tennessee plate assigned to Hertz Rental Car. Deputy Petig contacted Hertz and Hertz located the name Branson Bennett with an address of 627 South 65th Street, West Allis, Wisconsin. The Hertz office provided Deputy Petig with a cell phone number of 414-771-2770, but calls would not go through and it later turned out that the number was not Bennett's. Deputy Petig then had dispatch check to see if they could locate any information on Bennett and came up with an address of 407 W. Lake Street, Lake Mills, Wisconsin, and a phone number one numerical digit off from the number given by the Hertz office. Deputy Petig left a voice mail message for Bennett but did not receive a call back.

At his deposition, Bennett acknowledged that he had lived at 407 W. Lake Street, but not as a primary address. He described the property as business rental property, but conceded that the property was equipped for residential use. Bennett described the residential section as "living quarters" that he had used on occasion. He also received mail there.

Bennett agrees that he does not know whether Deputy Petig, in trying to determine where the citation should be served, purposely chose an address he knew Bennett did not use. Bennett testified that his claim is not that Deputy Petig intentionally listed an incorrect address for him, but rather that Deputy Petig failed to conduct additional investigation to make sure that Bennett still had a connection to the Lake Street address. Bennett does not dispute that Deputy Petig believed the Lake Street address was Bennett's current address.

Based upon the citation, a complaint was filed against Bennett in *Jefferson County v. Bennett*, 2008TR2525, an action presided over by the Honorable Jacqueline R. Erwin. On May 27, 2008, due to Bennett's failure to appear, Judge Erwin issued a default judgment which was signed by court clerk Melissa Quest. Bennett complains that Quest should have looked through the entire court file to ensure that Bennett had appeared in the action before affixing her name to the default judgment.

On June 4, 2008, after Bennett's citation was returned as undeliverable to the Jefferson County Sheriff's Department, the envelope indicating the return of unclaimed/undelivered mail service that enclosed the citation was filed with the court, indicating that the citation was returned and that Bennett had not received it.

Bennett's driver's license was suspended on August 8, 2008 by order of Judge Erwin. On September 10, 2008, a judgment was entered for the unpaid fine with Deputy Clerk Dana Scherer affixing her name to the pleading. Bennett also complains that Scherer affixed her name to the Judgment of Unpaid Fines. Bennett alleges that Scherer was aware that

Bennett's address of record with the Department of Transportation was different than the one she used, but never spoke to her to confirm this belief.

On September 22, 2008, Bennett paid his fine and his license was reinstated. On November 21, 2008, Judge Erwin refunded Bennett's monies and vacated the judgment.

**Analysis**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate only if, on the record as a whole, a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chi.*, 320 F.3d 748, 752 (7th Cir. 2003). Although the Court will draw inferences in favor of the non-moving party, the Court is not required to draw every conceivable inference from the record. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). "Inferences that are supported only by conjecture or speculation will not defeat a summary judgment motion." *Id.*

Bennett does not specify whether he is suing the defendants in their individual or official capacities. If the defendants are being sued in their official capacities, Bennett must meet the requirements for imposing municipal liability against the defendants' employer,

Jefferson County. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (explaining that official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent) (citing *Monell v. New York City Dep't. of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978)). To impose liability in an official capacity suit, a plaintiff must show that the violation occurred because of (1) the enforcement of an express policy; (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority. *Justice v. Town of Cicero*, 577 F.3d 768, 773 (7th Cir. 2009). In response to the defendants' motion for summary judgment, Bennett fails to create an issue of fact with respect to any of the requirements for *Monell* liability. Therefore, Bennett's official capacity claims must be dismissed.

To state a claim against the defendants in their individual capacities, Bennett must show that the deprivation of a right secured by the Constitution or laws of the United States was committed by a person acting under color of state law. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). It is also generally true that mere negligence is insufficient to maintain a Section 1983 claim. For example, to establish an equal protection violation, Bennett must show that the defendants purposefully discriminated against him based on his membership in a definable class (or a "class of one"). *DeWalt v. Carter*, 224 F.3d 607, 620 n.7 (7th Cir. 2000). Similarly, a showing of "mere negligence on the part of state officials is insufficient to implicate an individual's due process rights for purposes of a claim under section 1983." *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not

-5-

Case 2:09-cv-00895-RTR   Filed 09/30/11   Page 5 of 10   Document 57

implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property") (emphasis in original). The crux of Bennett's complaint is that the defendants should have conducted further investigation to determine his correct address and ensure that he would be served with his traffic citation. There is absolutely no evidence to suggest that the defendants intended to deprive Bennett of the chance to challenge his ticket and avoid his license suspension.

Bennett's claims must be dismissed for the additional reasons set forth below.

Procedural due process. The Supreme Court distinguishes between due process claims based upon established state procedures and random, unauthorized acts. *Leavell v. Ill. Dep't. of Nat. Resources*, 600 F.3d 798, 802 (7th Cir. 2010). Because the alleged deprivation in this case arose under circumstances where the state could not predict when the deprivation would occur (i.e., the deprivation was random and unauthorized), procedural due process is satisfied so long as there is a meaningful post-deprivation remedy. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944 (7th Cir. 2010). The fact that Bennett successfully challenged the suspension of his driver's license demonstrates that the post-deprivation remedies were adequate for purposes of due process. *See Hannemann v. So. Door County Sch. Dist.*, No. 09-C-1055, 2011 WL 2224659, at *8 (E.D. Wis. June 7, 2011) (use of post-deprivation appeal process to obtain reversal of school expulsion demonstrates that the appeal process is an adequate remedy); *Clair v. N. Ky. Ind. Health Dist.*, 504 F. Supp. 2d 206, 214 (E.D. Ky. 2006) ("the very fact that their claims were heard under applicable state law constitutes the receipt of adequate state post-deprivation processes and

-6-

procedural due process; evidence of their eventual success in state court only reinforces this conclusion"). To the extent that Bennett seeks damages resulting from the temporary loss of his driver's license, a tort action in state court is an adequate remedy. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).

<u>Substantive due process</u>. Substantive due process depends on the existence of a fundamental right, but there are "only a handful of fundamental rights for which the due process clause has a substantive component." *Taake v. County of Monroe*, 530 F.3d 538, 542 (7th Cir. 2008). The holding of a driver's license is not one of those rights. *Conley v. Kentucky*, 75 F. Supp. 2d 687, 689 (E.D. Ky. 1999). The "right to maintain a driver's license is substantial and entitled to due process protection, but has not been recognized as the type [of right] 'implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition.'" *Yandow v. Kronau*, No. 09-cv-903 (GLS/DRH), 2011 WL 282449, at *5 (N.D.N.Y. Jan. 24, 2011) (citing *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460-61 (2d Cir. 1996)); *see also Burlison v. Rogers*, No. 07-cv-302-Oc-10GRJ, 2008 WL 312890, at *1 (M.D. Fla. Feb. 4, 2008) (the suspension of a state driver's license does not implicate any substantive due process rights).

<u>Equal protection</u>. The Equal Protection Clause protects "members of vulnerable groups from unequal treatment attributable to the state," and it also "proscribes state action that irrationally single out and targets an individual for discriminatory treatment as a so-called 'class of one.'" *LaBella*, 628 F.3d at 941. Bennett fails to allege or provide evidence

which suggests differential treatment in relation to other, similarly situated individuals. "All equal protection claims, regardless of the size of the disadvantaged class, are based on the principle that, under 'like circumstances and conditions,' people must be treated alike, unless there is a rational reason for treating them differently." *Id.*

Privileges and Immunities. At least one federal circuit has held that a violation of the Privileges and Immunities Clause, U.S. Const. art IV, § 2, cl.1, can give rise to a cause of action under section 1983. *O'Reilly v. Bd. of Appeals of Montgomery County, Md.*, 942 F.2d 281, 283 (4th Cir. 1991). This clause was "designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948). Bennett is and was a resident of Wisconsin. *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988) (citizenship and residency are "essentially interchangeable" for purposes of the Privileges and Immunities Clause). Therefore, Bennett cannot claim that the defendants discriminated against him because he was a resident of a different state.

Commerce Clause. Bennett claims that the defendants violated his right to engage in interstate commerce because his license suspension led to a separate citation and court appearance in Ohio. The negative or "dormant" aspect of the commerce clause "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of Oregon*, 511 U.S. 93, 98 (1994). Discrimination in this context means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers*

*Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgt. Auth.*, 550 U.S. 330, 339 (2007) (quoting *Oregon Waste*, 511 U.S. at 99). Once again, Bennett offers no evidence that the defendants meant to deny him the opportunity to challenge his ticket and avoid default judgment. Moreover, Wisconsin's system of regulating the issuance of driver's licenses to its own residents does not discriminate against out-of-state economic interests in favor of in-state economic interests. If anything, suspending the driver's license of a Wisconsin citizen burdens the economic interests of Wisconsin.

<u>Right to privacy</u>. Bennett asserts that the suspension of his driver's license somehow violated his constitutional right to privacy. An individual's "right of privacy embodied in the Fourteenth Amendment protects an individual's interest in avoiding disclosure of personal matters and the right to make important decisions in the area of marriage, procreation, contraception, family relationships and child rearing and education without the interference of government." *Roach v. City of Evansville*, 111 F.3d 544, 550 (7th Cir. 1997) (citing *Whalen v. Roe*, 429 U.S. 589, 600-01 and n.26 (1977)). Courts have also defined a "certain zone of privacy or expectation of privacy in the Fourth Amendment search and seizure context . . ." *Id.* None of those rights are implicated by Bennett's complaint against these defendants.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The defendants' motion for summary judgment [D. 38] is **GRANTED**; and

2. This matter is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2011.

                                              **BY THE COURT**:

                                              *[signature]*
                                              _____
                                              **HON. RUDOLPH T. RANDA**
                                              **U.S. District Judge**